UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE CONTRERAS,<br><br>Petitioner,<br><br>v.<br><br>RONALD DAVIS, Warden of California State Prison at San Quentin,<br><br>Respondent.[1] | Case No. 1:19-cv-01523-AWI-SAB<br><br>DEATH PENALTY CASE<br><br>FINDINGS AND RECOMMENDATION ON PETITIONER'S THIRD MOTION FOR EQUITABLE TOLLING<br><br>(ECF No. 81)<br><br>FOURTEEN (14) DAY DEADLINE TO OBJECT |

On October 6, 2021, Petitioner Jorge Contreras, through counsel, moved to equitably toll the limitations deadline under 28 U.S.C. § 2244 for the filing of his federal habeas petition in this action. The motion, Petitioner's third, requests that the current, as tolled petition filing deadline of December 9, 2021, be further equitably tolled to and including June 9, 2022.

Respondent Warden Ronald Davis, through counsel, timely filed his response to the motion on October 28, 2021. Petitioner timely filed a reply in support of the motion on November 8, 2021. No hearing date has been set and the Court finds that none is required. The matter was taken under submission.[2]

Upon consideration of the parties' filings, the record, and controlling legal authority,

---

[1] Ron Broomfield, Acting Warden of San Quentin State Prison, is substituted for Ronald Davis, former Warden of San Quentin State Prison, pursuant to Federal Rules of Civil Procedure 25(d).

[2] See ECF No. 82 at 1 n.1.  Reference is to CM/ECF system pagination unless otherwise provided.

1

the Court makes the following findings and recommendation.

## I.

## BACKGROUND

On December 11, 1996, Petitioner was convicted of first degree felony murder and robbery, with the special circumstance of murder in the commission of the robbery found true, and sentenced to death. See Tulare County Superior Court Case No. 37619.

On June 17, 2008, Petitioner filed his automatic appeal. People v. George Lopez Contreras, California Supreme Court Case No. S058019.

On February 6, 2012, Petitioner filed his state habeas petition. In re Jorge Contreras on Habeas Corpus, California Supreme Court Case No. S199915.

On December 12, 2013, the California Supreme Court affirmed Petitioner's judgment of conviction and sentence on automatic appeal. People v. George Lopez Contreras, 58 Cal. 4th 123 (2013).

On October 9, 2019, the California Supreme Court summarily denied on the merits Petitioner's state habeas petition. In re Jorge Contreras, Case No. S199915.

On October 28, 2019, Petitioner commenced this federal habeas proceeding pursuant to 28 U.S.C. § 2254 by filing pro se requests for *in forma pauperis* status and appointment of counsel.

On December 9, 2019, the Court adopted the recommendation of the Selection Board for the Eastern District of California and appointed Brian M. Pomerantz, Esq. and Ken Murray, Esq. (hereinafter each and both referred to as "Counsel") to represent Petitioner in this federal habeas proceeding.[3]

On February 14, 2020, Respondent lodged the record.[4]

On February 26, 2020, the Court tolled the 28 U.S.C. § 2244(d)(1) petition filing deadline to December 9, 2020 pursuant to the parties' stipulation regarding delay in appointment of federal habeas counsel.

---

[3] The order issued on December 6, 2019 and docketed on December 9, 2019.
[4] Respondent amended the lodged record on July 23, 2020, June 9, 2021, and August 23, 2021.

2

On October 23, 2020, the assigned United States District Judge adopted-in-full the The Court's findings and recommendation granting Petitioner's first motion for further prospective equitable tolling of the AEDPA[5] (i.e. 28 U.S.C. § 2244(d)(1)) petition filing deadline to June 9, 2021, based upon Petitioner's ongoing reasonable diligence and impacts of the continuing COVID-19 pandemic then before the Court.

On June 7, 2021, the assigned United States District Judge adopted-in-full the Court's findings and recommendation granting Petitioner's second motion for further prospective equitable tolling of the AEDPA habeas petition deadline to December 9, 2021 based upon Petitioner's ongoing reasonable diligence and impacts of the continuing COVID-19 pandemic then before the Court.

## II.

## DISCUSSION

Petitioner argues that notwithstanding Counsel's continuing diligent efforts, available COVID-19 vaccines, and federal, state and institutional guidelines and protocols for COVID-19 re-opening,[6] the risk of contracting and spreading the virus is unacceptable and leaves Counsel unable to properly perform the tasks they must do in order to file a reasonably competent federal habeas petition, prior to the requested as-tolled date of June 9, 2022. (ECF No. 81 at 5, 8-10, 15-16; see also ECF No. 84 at 5-8, 13.)  Particularly, Petitioner suggests that Counsel's investigation and development of a complete federal petition, including potential new claims and related mental state and mitigation evidence, have been and continue to be impeded by COVID-19 related limitations on necessary in-person, confidential, unmasked prison visits and interviews with experts and lay witnesses; collection and review of unspecified records and evidence; and assembly of the defense team. (See e.g., ECF No. 81 at

---

[5] Antiterrorism and Effective Death Penalty Act of 1996.

[6] See generally ECF No. 81-1 at 98 n.1 citing Interim Public Health Recommendations for Fully Vaccinated People, Centers For Disease Control And Prevention, July 28, 2021; Id. at 106 n.24 citing Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, June 9, 2021; Id. at 27 n.125 citing California Department of Corrections and Rehabilitation, COVID-19 Response Efforts (accessed July 29, 2021); ECF No. 83-1 at 2-3, 5, and ECF No. 83-5, citing the California Department of Corrections and Rehabilitation "Roadmap to Reopening" plan which includes consideration of visitor vaccination status and COVID-19 testing, masking, and social distancing.

1  19-27; ECF No. 81-1 at 163-64; ECF No. 84 at 14-15; ECF No. 84-1 at 4-5.)

2  Petitioner points to the history and progression of the COVID-19 pandemic set out in
3  his prior tolling motions, and the emergence of the Delta variant. (ECF No. 81 at 8-10.) He
4  points to his own infection with COVID-19 at San Quentin. (ECF No. 84 at 5.) He points to
5  October 5, 2021 data available from the Centers for Disease Control and Prevention showing
6  certain relative increases in infection and death rates, while only 59.4% of California's total
7  (i.e. vaccine eligible and ineligible) population is vaccinated against COVID-19. (ECF No. 81
8  at 9.) He points to October 5, 2021 data available from the Institute for Health Metrics and
9  Evaluation projecting that approximately 62,000 more Americans will die of COVID-19 by the
10 current as tolled date of December 9, 2021. (Id.) He points to evidence of post-vaccination
11 "breakthrough" infections, hospitalizations, and deaths. (Id. at 11-12, 15-16; ECF No. 81-1 at
12 41 n.5 ) He points to evidence that conditions at California prisons in general, and during legal
13 visits at San Quentin in particular, pose an increased risk of infection relative to the public
14 generally. (ECF No. 81 at 10-14; ECF No. 81-1 at 44.) He points to evidence that at San
15 Quentin, proper COVID-19 safety protocols are not always be followed. (ECF No. 84-1 at 3.)

16 Particularly, Petitioner states that legal visits at San Quentin have not been
17 continuously available, are limited to one-hour, and are unsafe due to the risk of spreading and
18 getting COVID-19. (ECF No. 81 at 10-14, 22; ECF No. 84 at 5-7.) He states that as a result,
19 Counsel, absent any notice from San Quentin of the resumption of in-person legal visits (see
20 ECF No. 84-1 at 2-3), visited him only once, shortly after their appointment in early December
21 2019, with Counsel communicating otherwise through presumptively non-confidential letters,
22 and by phone to the extent his alleged Obsessive Compulsive Disorder allows. (ECF No. 81 at
23 10-14, 22; ECF No. 84-1 at 1-2.) He states that in-person mental health evaluation cannot be
24 conducted at the prison, for the same reasons. (ECF No. 81 at 27).

25 Relatedly, Petitioner states that because of the continuing impacts of COVID-19, travel
26 to find and interview witnesses is not safe, many record repositories have been closed or
27 minimally staffed, and there are significant special challenges to developing potential
28 mitigation evidence in Mexico. (Id. at 14-15, 21-25; ECF No. 81-1 at 98.) For example, he

1  suggests it is too risky for the defense team to visit Tulare County, where the trial took place
2  and witnesses reside, given the relatively low rate of COVID-19 vaccination and available ICU
3  beds, the advanced age and poor health of some witnesses, and evidence that COVID-19
4  protocols are not being followed. (ECF No. 81 at 14-15, 28; ECF No. 81-1 at 94-95; ECF No.
5  84 at 11-12.) Counsel, based upon information provided by a member of Petitioner's family,
6  avers that "most of [Petitioner's] family members have not been vaccinated and do not plan to
7  get vaccinated." (ECF No. 84-1 at 2.)
8        Petitioner maintains that notwithstanding such extraordinary impacts of COVID-19,
9  Counsel and the defense team have and will diligently gather, organize, and review the core
10 and non-core record as part of their complex mitigation investigation. (ECF No. 81 at 16-17,
11 28.) He maintains that, in addition to undisclosed efforts reflecting work product, Counsel
12 diligently have and will draft record based claims, review many thousands of pages of
13 materials, research and consult with potential experts, communicate with Petitioner by phone
14 and mail, and craft a presumptive mitigation plan based upon the currently known information
15 and the exhibits that were filed in state post-conviction proceedings. (ECF No. 81 at 23, 28;
16 ECF No. 84 at 14-15; ECF No. 84-1 at 1.)
17       Petitioner concludes that safe and competent in-person field investigation by the
18 defense team cannot happen while social distancing and masking remain necessary. (See ECF
19 No. 81 at 17-28 & ECF No. 81-1 at 99 n.3 & 100 n.4 citing ABA Guidelines for the
20 Appointment and Performance of Defense Counsel in Death Penalty Cases, and Supplemental
21 Guidelines for the Mitigation Function of Defense Teams in Death Penalty Cases [collectively
22 "ABA Guidelines"] (requiring a thorough and independent investigation of guilt and penalty
23 phase issues); see also ECF No. 81-1 at 107-11 (discussing COVID-19 in context of mitigation
24 field investigation.)
25       Petitioner also surmises that, should the Court deny further tolling, this matter
26 nonetheless would proceed slowly, given the specter of delay arising from likely federal
27 appellate review and state exhaustion proceedings. (ECF No. 84 at 7-9.)
28       Respondent opposes further equitable tolling of the section § 2244 petition filing

deadline. He argues COVID-19 no longer is an extraordinary circumstance impeding preparation a complete federal petition in this case, and that Petitioner has not diligently pursued preparation of his federal petition since this matter was last before the Court in June of this year.[7] (ECF No. 83 at 2, 4-10.) He argues COVID-19 vaccines, guidelines, and protocols have markedly eased the previously exceptional COVID-19 related restrictions and impediments. (Id.) He observes that vaccines have been widely administered including to 71.5% of (eligible) California residents and 89% of inmates at San Quentin. (Id.) He observes the reopening of society, courts, schools, and institutions, consistent with COVID-19 safety guidelines and protocols. (Id.) He observes that confidential legal calls and in-person visits have been available at San Quentin since at least January 2021, except during the period August 14-31, 2021 when visits were suspended due to a COVID-19 event, and that confidential in-person contact visits of up to six hours have been available since September 13, 2021, including for psychological testing. (Id.; see also ECF No. 83-1 at 2-3; ECF Nos. 83-2, 83-3, 83-4, 83-5); Penal Code § 5058.7.[8]

Respondent argues that given the improving pandemic circumstances, and apart Counsel's single prison visit nearly two years ago, Petitioner has not demonstrated reasonably diligent pursuit of his federal habeas petition. (ECF No. 83 at 2, 4-10.) He argues the continuing COVID-19 impediments Petitioner alleges are unsupported at a level greater than surmise, and are untethered from the facts and circumstances of this case. (Id.) He states that ABA Guidelines and commentary from the capital defense community, relied upon by Petitioner, are not binding or persuasive authority that any necessary field investigation cannot be safely and adequately undertaken on the facts and circumstances of this case. (Id. at 9.)

"A habeas petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Fue v. Biter, 842 F.3d 650, 653 (9th Cir. 2016) (*en banc*) (quoting Holland v. Florida, 560 U.S. 631, 649 (2010)); see also Espinoza-Matthews v.

---

[7] The Court finds unpersuasive Respondent's invitation to reconsider the Court's prior ruling that prospective equitable tolling is available in this Circuit, for the reasons previously stated. (See ECF Nos. 55, 59, 71, 74)
[8] Reference to state law is to California law.

1  California, 432 F.3d 1021, 1026 n.5 (9th Cir. 2005) (citing Pace v. DiGuglielmo, 544 U.S. 408,
2  418 (2005)); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1288-89 (9th Cir.
3  1997) (approving prospective equitable tolling of the one year statute of limitations under 28
4  U.S.C. § 2244(d) where "extraordinary circumstances" beyond a prisoner's control make it
5  impossible to file a petition on time), partially overruled on other grounds by Calderon v.
6  United States Dist. Ct. (Kelly V), 163 F.3d 530, 540 (9th Cir. 1998), abrogated on other
7  grounds by Woodford v. Garceau, 538 U.S. 202 (2003).

In addition, there must be a causal link between the extraordinary circumstance and the inability to timely file the petition. See Sossa v. Diaz, 729 F.3d 1225, 1229 (9th Cir. 2013) ("[E]quitable tolling is available only when extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time and the extraordinary circumstances were the cause of the prisoner's untimeliness."). A literal impossibility to file, however, is not required. Grant v. Swarthout, 862 F.3d 914, 918 (9th Cir. 2017) (acknowledging that equitable tolling is appropriate even where "it would have technically been possible for a prisoner to file a petition," so long as the prisoner "would have likely been unable to do so.").

Equitable tolling is limited to rare and exceptional circumstances and typically applied sparingly. Cadet v. State of Florida Department of Corrections, 853 F.3d 1216, 1221 (11th Cir. 2017). It may be appropriate where external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim. Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999); see also Doe v. Busby, 661 F.3d 1001, 1015 (9th Cir. 2011) (the effort required is what a reasonable person might be expected to deliver under his or her particular circumstances). Among the factors that courts have considered relevant in deciding whether equitable tolling of the limitations period is appropriate are the complexity of the legal proceedings and whether the state would suffer prejudice from the delay. Hoyos v. Wong, Case No. 09-cv-0388 L (NLS), 2010 WL 596443, at *4–5 (S.D. Cal. Feb. 16, 2010).

This "exercise of a court's equity powers must be made on a case-by-case basis" and it "enables courts to meet new situations that demand equitable intervention, and to accord all the relief necessary to correct particular injustices." Holland, 560 U.S., at 649–50. The petitioner

"bears the burden of showing that this extraordinary exclusion should apply to him." Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002); accord Milam v. Harrington, 953 F.3d 1128, 1132 (9th Cir. 2020).

Here, the Court finds that at this point in time, on the facts and circumstances of the case and the record now before it (including as to case complexity and Respondent's apparent concession that further tolling would not be prejudicial), Petitioner has demonstrated, at least inferentially, that notwithstanding Counsel's ongoing reasonable diligence, exceptional circumstances raised by the COVID-19 pandemic likely impede investigation, development, and presentation of a complete federal habeas petition prior to February 9, 2022.

Petitioner has made a sufficient showing of Counsel's diligence in the face of the ongoing pandemic. See Ford v. Gonzalez, 683 F.3d 1230, 1237 (9th Cir. 2012) (citing Holland, 560 U.S. at 653) ("The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence."). For example, Counsel claim to have assembled and reviewed available portions of the core and non-core record, and that they continue to research and draft record based claims previously adjudicated in state court. Counsel claim to have communicated with Petitioner by phone within the last six months, and that they personally visited him shortly after their appointment. Counsel claim to have researched and formulated a mitigation plan in relation to possible new claims in this proceeding, and considered the necessity of potential expert and lay mitigation evidence. Counsel claim to have assessed and weighed the noted pandemic related risks and impediments to accessing such evidence.

Also, Petitioner has made a sufficient showing that notwithstanding available COVID-19 vaccines and safety guidelines and protocols, exceptional circumstances raised by the ongoing COVID-19 pandemic have presented varying and somewhat cyclical impediments to a constitutionally adequate mitigation investigation and development and presentation of new claims. For example, Counsel claim COVID-19 related delay in confidential in-person legal visits and expert examination, and confidential in-person interviews with potential lay and expert mitigation witnesses, impacted by the varying demographic, geographic, health, and

vaccination status of the witnesses and defense team members.

The Court again observes the size and complexity of this capital habeas case, the apparent extent of the mitigation investigation to be conducted, and Respondent's apparent concession that further equitable tolling would not be prejudicial.  (See ECF No. 71 at 7; see also ECF No. 55 at 10, citing ECF Nos. 44-48.)  It remains that Respondent does not suggest he would suffer any prejudice should the requested relief be granted.  The undesigned finds no reason to believe the relief granted hereunder would have a significant impact upon Respondent's ability to oppose any challenges raised by Petitioner to his underlying 1996 judgment of conviction.

Even so, Petitioner has not demonstrated on the facts and circumstances of the case and the record now before the Court, that despite Counsel's continuing reasonable diligence and available COVID-19 vaccines, guidelines and protocols, the pandemic raises exceptional circumstances that entitle him to equitable tolling beyond February 9, 2022.  Nor has he demonstrated, on the facts and circumstances of the case and the record now before the Court, that any necessary investigation, including in-person interviews and examinations, cannot safely and adequately take place consistent with COVID-19 guidelines, policies and protocols. See e.g., Jurado v. Wong, 2009 WL 3320494, at *7 (S.D. Cal. Oct.14, 2009) (the court considered petitioner's showing of the work to be done to complete a comprehensive federal petition and thereupon equitably tolled for only a portion of the time consumed by the extraordinary circumstance); Bunyard v. Davis, 2016 WL 128429, at *6 (equitable tolling for full duration of exceptional circumstance denied where petitioner made no particularized showing that the portions of the record they lacked were so crucial that nothing else could be done until they were reviewed).  Petitioner "bears a heavy burden to show that [he] is entitled to equitable tolling, lest the exceptions swallow the rule."  Rudin v. Myles, 781 F.3d 1043, 1055 (9th Cir. 2015); accord Milam v. Harrington, 953 F.3d 1128, 1132 (2020) (citing Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002)) (the petitioner "bears the burden of showing that this extraordinary exclusion should apply to him.").

Notably,  Counsel, in their first motion for equitable tolling, stated that COVID-19

1    impediments would prevent effective representation in this proceeding "until there is a vaccine
2    or the transmission rate of COVID-19 dramatically drops." (ECF No. 55 at 5 citing ECF No.
3    49 at 15 & ECF No. 49-3 at 2.)  Counsel have not demonstrated, on the facts and
4    circumstances of the case and the record now before the Court, any extent to which these
5    contingencies remain unrealized.
6        The Court concludes the extraordinary circumstances of the COVID-19 pandemic have
7    impeded Petitioner's right to the assistance of appointed habeas counsel in preparing a
8    complete federal petition, prior to February 9, 2022.  18 U.S.C. § 3599(a)(2); McFarland v.
9    Scott, 512 U.S. 849, 855-57 (1994) (given the complex nature of capital habeas proceedings
10   and the seriousness of the possible penalty, an attorney's assistance in preparing a federal
11   habeas corpus petition is crucial and includes a right for that counsel meaningfully to research
12   and present a defendant's claims); McCleskey v. Zant, 499 U.S. 467, 498 (1991) (in the pre-
13   AEDPA context, stating that "petitioner must conduct a reasonable and diligent investigation
14   aimed at including all relevant claims and grounds for relief in the first federal habeas
15   petition."), superseded by statute as recognized in Banister v. Davis, __U.S.__, 140 S. Ct.
16   1698, 1707 (2020).
17       For the reasons stated, the Court finds that Petitioner has carried his burden of showing
18   that notwithstanding the continuing exercise of reasonable diligence, the present extraordinary
19   circumstances of the COVID-19 pandemic make it unlikely that a proper federal habeas
20   petition in this case can be completed and filed prior to February 9, 2022.  Holland, 560 U.S.,
21   at 649–50; Miranda, 292 F.3d, at 1065; see also Grant, 862 F.3d, at 918; Rules Governing §
22   2254 Cases, Rule 2, 28 U.S.C.A. foll. § 2254.  For the same reasons, the Court finds that were
23   a motion for equitable tolling to accompany a federal habeas petition filed on February 9,
24   2022, Petitioner would carry his burden on the motion.

## III.

## FINDINGS AND RECOMMENDATION

27       Accordingly, based upon the findings above, it is recommended that Petitioner's third
28   motion for equitable tolling (ECF No. 81) be granted-in-part, such that Petitioner shall file his

federal petition for writ of habeas corpus on or before February 9, 2022, and that Petitioner's motion otherwise be denied without prejudice to further equitable tolling based upon specific impacts of the COVID-19 pandemic on the facts and circumstances of this case.

These findings and recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after the filed date of these findings and recommendation, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Any failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014), citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **November 19, 2021**

UNITED STATES MAGISTRATE JUDGE